and number 17-3826. Mr. Donohue and Ms. Kuhn. Ian, I screw up in a pair every single time, sorry. Good morning, Your Honors, and may it please the Court, Keith Donohue for Appellant Donte Island. If I may, I'd like to reserve three minutes of my time for rebuttal. Absolutely, no problem. This Court's decision in United States v. Merlino in 2015 really took to heart some of the Supreme Court's recent teachings about what it means for a statute to be jurisdictional. And the statute that was at issue in Merlino and that's at issue here is in Title 18, it's Section 3583I, and it affords a mechanism for adjudicating violations of supervised release that occur late in the term of supervision. The statute provides that even after supervision has expired, the Court has the power to revoke supervised release and return the defendant to prison if a warrant or summons has issued before the supervised release period ends. Now in Merlino, the Court held that statute to be strictly jurisdictional, not to be a claims processing rule or some other sort of deadline, and by virtue of its jurisdictional character, not to be subject to equitable tolling or waiver. So fast forward to this case. The government acknowledges formally speaking. I mean, this case is, I mean, what's interesting here is that you've got about four issues that seem to have circuit splits, but the one that's got to be the toughest for you, it would seem, is the fugitive rule. And why don't you address that? Because it's most, there's only one circuit, I think, that goes your way. Is it the first? Is that right? The first circuit has gone our way. So is it fair to be a fugitive for a year, and then the next time the authorities see him, he's shooting at a police officer, or actually shooting and hitting a police officer numerous times, and then say it's too late, you can't do anything about it? Yes, it is fair. The concerns that the government raises about a windfall slipping through are really overblown. I may just step back for one second to the precedent the circuits put on this matter. We do think that not only has the first circuit ruled in our favor, but this court, admittedly on different facts, has stated unequivocally that the statute does not toll for any purpose other than imprisonment. What were the facts in that case? In that case, the district judge had attempted to toll supervised release during a period of deportation. Okay. And I'm not suggesting the holding of the... Aren't the facts quite different, though? The facts of the cases are different. It's the language of Cole that's important here, where the court states outright that under the statute, and I'll quote, this is at page 117, the statute provides for the supervised release period to start on the day that the defendant is released from prison. It continues during the period of months or years that the district court ordered its judgment. And here's the critical point. As noted above, the only exception is when the defendant is in prison for more than 30 days for another crime. The facts were different, but the court did say that and does seem to cover this situation. And what are you reading from? United States v. Cole, Your Honor, the 2009 decision. Was that... I'm sorry, finish. 567 F. 3rd 110, page 117 in particular. Was that essential to the decision? Was that statement that you just read? I believe it was the rationale for the decision, yeah. And the other rationale, it seems to me, was that this was a situation where the defendant simply had no control over his situation. It was. It was a deportation proceeding, and he was doing what he was compelled to do under those circumstances. It seems to me it's quite different from a fugitive. They are different, Your Honor, and I agree they're different. But as far as the fact that the defendant in Cole had no control, that's summoning an equitable consideration. Cole, removal for being unlawful in the United States is hardly the type of wrongful conduct that absconding is, is it? Right. And the wrongful conduct of absconding, there is, as a logical matter, no prospect a person will escape punishment for. No prospect of that. Once the person absconds, when that happens, during the term of supervision, the probation office can file its petition before supervision expires. If that person is discovered 30 years later, he can be brought back to court and held accountable for having absconded. Because the warrant's issued. Because the warrant's issued. What do you mean to abscond from supervised release? I mean, imprisonment is very easy. Right. Not in prison anymore. But absconding from fugitive vis-a-vis supervised release, does it mean not calling in or not showing up for, I mean, it would seem to me pretty difficult to figure out what. Absolutely. How you, how you extend the date or what, when it's told. I think that's absolutely correct. And so I'll try to offer some thoughts on it. But I think a key point is that once a district court is engaged in these determinations, we're going to be returning to a very amorphous jurisdictional practice, which is exactly what Merlino said should not be allowed here. No amorphous practices. So what does it mean to abscond? I looked up those words because, you know, the government really, really doesn't elaborate on them. The first place I looked was Black's. And Black's Law Dictionary offers meanings that in no way contemplate that a failure to keep reporting to your probation officer would be absconding. And that's all Dante Island did here. What Black says that, abbreviating somewhat, abscond means to leave secretly or suddenly. Fugitive is someone who flees or escapes, especially by leaving the jurisdiction. Both of them contemplate leaving the jurisdiction and, perhaps more broadly, some affirmative effort to escape detection. Here, Mr. Island was arrested at the address the probation office had on file. All right? So he did cease affirmatively reporting. He admitted that violation. He was subject to revocation for it because it was timely alleged. But apart from failing that condition of his supervisory release, he didn't do anything to try to escape detection. So we don't think that there should be fugitive tolling. I do think the language on Cole really has to be reckoned with. I think Cole is absolutely correctly decided as well. But if the court does wish to carve out some sort of exception, then it would by no means be clear Dante Island would be subject to it. Now, do you think, I mean Merlino says that 3583I doesn't merely set a deadline. It expressly authorizes a grant of power to the district court and conditions the existence of that power on a specific and minimally onerous event. Does that control here such that we would have to go and bank to find that the date is something other than the date that has been set as the deadline for the power of the district court? On which issue, Your Honor, on bank, on Cole? I mean, no. But I'm saying you could read Merlino to say that the power has been set and the power is conditioned on the exercise on a specific and minimally onerous event. So there is no such thing as tolling some limitation period. You know, it would be one thing if there's some limitation period or four months, whatever. But tolling a period, it's almost as if in Merlino we're saying it's a statute of repose. And that's when it ends and there is no ability to change it. Now, you could come in perhaps if you think the person is not reporting and they're absconding. You come in and ask the court to set a different date for the expiration of supervised release because the person has absconded. But the way I read Merlino, you could argue that we would have to go in bank in order to say that the date is different because the power is set on that specific date. It's not a matter of – in other words, it's not a matter of fairness. It's a matter of the power of the court is limited. Right. So would we have to end bank if we were to find that fugitive status has – gives an effect here? I think you might because of Cole. But to concentrate on the language Your Honor is focusing on, I actually don't think that would require an en banc adjudication. What it points to is the distinction between the rather unique mechanism codified at 3583I, which is not tolling per se. It's not a toll because supervised release does expire. It's a kind of reach back jurisdiction. So I don't – meanwhile, we have one tolling provision in the Sentencing Reform Act at a different codification providing for tolling when a person has been imprisoned for a conviction. So in my view, Cole said that's the only instance in which the statute permits tolling. In light of Cole, it might be necessary to go en banc before any fugitive tolling exception could be newly created. But the court certainly shouldn't take that route because it would be a poor decision to create this fugitive tolling exception. Cole is absolutely correct in saying that Congress, in electing to codify one type of toll by the canon of expressio unius ex exclusio alterius, implied it was not codifying the others. The First Circuit decision, which Judge Ambrose mentioned, really endorses Cole's reasoning, draws out that point, and explains that before the statute's enactment, judicial practice had featured both of these tolls. It was common either to toll for fugitive status or because the defendant was imprisoned. Congress then selectively codified just one of them, the imprisonment one. And so Hernandez-Ferrer amplifies the point made in Cole. And Hernandez-Ferrer also makes a point that I tried to express a moment ago, that there's really not a danger of a windfall because provided a warrant issues during the term, the person is going to be subject to adjudication if and when he or she is one day comes back into the custody. Fugitive tolling has always been a traditional principle of parole, has it not? I think that's probably correct. So that has several pieces of significance. One is then, therefore, Congress's decision not to codify it becomes still more conspicuous and indicates an intent only to codify the other commonly applied toll. There's also a respect in which supervised release differs from parole that somewhat sets to the side that comparison. Because in parole, you would get credit for different periods of time. And I can't cite you law and verse on it. But under supervised release, the defendant gets no credit for any time on the street. So let's say that fugitive I was mentioning is apprehended 30 years later. If he were guilty, say, of a drug offense in the first instance, he could be sent to prison for five years. And on top of that, he could have a lengthy period of supervised release renewed to follow that five years, something that didn't really exist with parole. So that fugitive can sort of be made to pay, if you will, by a new period of supervised release to which he gets no credit for all that time he was a fugitive. In that sense, it's different from parole. Thank you. We'll get you back. Thank you. Ms. McKeon. Good morning, Your Honors. May it please the Court, Bernadette McKeon for the government. This Court should join the majority of the circuits and find that a period of supervised release is told by a defendant's fugitive status from supervision. The decisions are well-reasoned. The statute doesn't contain any express provision for fugitive tolling, only. There is no express provision for fugitive tolling. I guess the question becomes how do we interpret Congress's guidance. Both the Second Circuit, the Ninth Circuit, and the Fourth Circuit have expressed this exact issue. And they found, notwithstanding the canon that was just cited by the defense, that there was another more important rule of statutory construction. That is, if Congress intended to override such a longstanding, firm, and strong policy of fugitive disentitlement, it would have said so. And the Fourth Circuit noted that, and the Ninth Circuit noted that. All three circuits stressed that point. But is a fugitive entitlement, has it always been supervised release, or is it imprisonment? No. Well, when fugitive status in terms of supervised release, is that the question? Well, you say it's been a longstanding. Oh, no. In terms of not, in other words, the longstanding maxim is that a defendant should not be profited or be rewarded for his wrongdoing. So it is. But how does that apply here when a warrant can clearly be issued before the expiration of supervised release? Not in many cases, Your Honor. If somebody is a fugitive here, the interesting part is, is that the defendant actually committed the new offense five days before supervised release expired. That is an issue that's related to the 3583I issue. The fugitive tolling doctrine is an entirely different creature. 3583I, as the defense recognized, is not a tolling provision. It's an extension or reachback provision in certain circumstances when a timely warrant is issued. The fugitive tolling doctrine takes it right out of the realm of 3583I. What the courts have held is while you are a fugitive from supervision and are not subject to the court's supervision, that period is tolled. So that if and when, for example, you could commit an offense, as happened in some of these cases, eight years after your supervised release term ended, and the fugitive tolling doctrine allowed the court at that point to consider the new charges. But you don't, you're not, but in this situation, you're not really revoking the supervised release. You're fining him for another crime. No, but that would be, that's just the trigger in this case. There could be some other violation that's alleged after the fact. The most typical one would be if you're a fugitive, they find you because you are arrested. But there could be other scenarios. So the point is there's been just a longstanding recognition that fugitives should not benefit by their wrongdoing. It's been applied consistently in the parole context, in the probation context, in the appellate disenfranchised concept. But that's a, that is somewhat of an equitable, you know, concept. It is an equitable concept. So how do you square that with the language in Merlino that the 3583I doesn't merely set a deadline. It expressly authorizes a grant of power to the district court and conditions the existence on a specific and minimally onerous event. How can we say? Merlino, it doesn't, Merlino is, Merlino is addressing an entirely different aspect. It is not a tolling provision. 3583I is a reachback provision. You have to commit the offense within the period of supervised release. The tolling doctrine, on the other hand, is a much broader equitable concept. What does it do? There's no interplay with 3583I. So what would happen here? What happens? You go in and you say, okay, he wasn't reporting for four months. Therefore, the expiration date is a different date. Your Honor, not just not reporting. And I want to clarify that point because you raised that before. There was far more than nonreporting here. It's laid out in the probation officer's petition. Did he abscond? Did he flee? He was, his whereabouts were unknown. The probation officer made numerous efforts to find him. This is laid out in the petition. He had given them a new address. He went to the address. He was told he wasn't lived there. This is all spelled out in the petition. There was no objection made or no, the reason this wasn't developed further on the record was because everybody recognized he was a fugitive. The government said it four times during the hearing, that the prosecutor kept announcing that he was a fugitive for a period of time. Well, why did someone then go in and petition the court to extend the date of his supervised release? Because it's not necessary, Your Honor. First of all, once he was arrested, and it just happened to happen within the period of supervised release, it could have happened two weeks later. The tolling doctrine is meant to toll the period of supervised release while you are not subject to supervision because of your own actions and your own wrongdoing. It's a far cry from the Cole scenario. Somebody is removed from the country pursuant to a deportation order. That case only addressed that. The narrow issue there was can you order that as a condition of supervised release? But why don't we, why can't we view the provision regarding the expiration as saying, okay, the warrant has to be issued before the expiration of supervised release because of something you've done. Now, if that time comes and goes, you're not going to revoke his supervised release for that. You're going to arrest him for a new crime or something new, but there's an end to this supervised release and this continuous, you know, revoking, revoking, revoking. There would be if you're not a fugitive. If the defendant was not a fugitive and that warrant wasn't returned until a day after the expiration of the period of supervised release, this entire argument would be about whether or not the court had jurisdiction under 3583I, which is the second argument here. We're saying you don't even need to reach that because if you apply, as four other circuits have, the doctrine of fugitive tolling, which is an equitable remedy, then the court doesn't need to consider whether or not there was jurisdiction under 3583I. For our purposes here, is there any difference between supervised release and parole? Well, supervised release was a replacement for parole, and the reason they replaced the parole system with supervised release, one of the primary reasons was because there was inadequate supervision in the parole context. So supervised release was actually intended to provide more supervision, to be more helpful in easing a defendant's transition to society, to promote rehabilitative goals. These are the issues that were stressed by the courts who talked about fugitive tolling. They found two principal reasons why fugitive tolling should apply. Number one, to promote the goals of supervised release, as expressed by Congress and the courts. Secondly, because it's consistent with and it's warranted by the longstanding policy against fugitive disentitlement. Why doesn't the statement in Cole decide this case? If I may, if I could step back and just talk about the Cole decision for a minute. The Cole was one of four circuits to address a very specific issue, which is can a district court in imposing conditions of supervised release order a defendant who is going to be subject to removal or deportation, order that his term of supervised release is suspended while he's outside of the country, pursuant to a removal order. And all five circuits, including Cole, were unanimous that no, this is exceeding the court's authority. And there were two reasons. There was one primary reason, and the primary reason cited by all the cases was this isn't a condition. This is not what we typically see as a condition of supervised release. And they referred to the statute and the types of conditions. And Judge Rendell, I think you outlined some of the types of conditions in your opinion in Cole. This is a far cry from a condition. It's a state of suspension. So that was the primary holding. Cole had also argued the canon of statutory construction that Congress only provided for one tolling exception, not in 3583, but in 3264, the general release statute, where it said your period of supervised release runs on the first day that you are released from prison and it would be suspended or the clock would not run during the period if you were incarcerated for a period of more than 30 days on another crime. So the defendants all argued in those cases that that was controlling. And so this court in response, and I'd like to read the exact language, said, we find persuasive Cole's argument that the canon suggests that where Congress has explicitly allowed for tolling only when the defendant is imprisoned under another charge, it does not intend for district courts to toll supervisory release under any other circumstances. First of all, I don't think this is a definitive statement. It's saying suggests. And there's no question that that's a general canon that's well recognized. But isn't that consistent with what the First Circuit held? That's the First Circuit's opinion turns entirely on this canon. The other circuits have rejected that. And the reason they have done so is because fugitive status is a far cry, and that's the word the Second Circuit used, is a far cry from a condition of supervised release in a deportation, a tolling of deportation during a deportation process. And what they explained was, and it makes sense, fugitive tolling is such a long established equitable tolling doctrine. There was no policy or practice regarding a condition of supervised release when a defendant was deported. If Congress meant to include it, it makes sense that they would have included it. I'm still not sure I understand why the policy arguments that you make here override what we said in Cole. Well, first of all, Cole, that statement in Cole is dictum. That does not pertain to the holding in Cole, which was this is not an appropriate condition of supervised release. And secondly, even later, and when you read the statement itself, it says nothing more than it suggests that. This issue was not before the court. No other issue was before the court regarding tolling. This is pure dictum. Secondly, later in the opinion, the court narrows the issue by saying if Congress intended there to be an exception for post-removal defendants, it would have said so. That is a more accurate reflection of the holding in Cole, which was we are relying somewhat on the absence of a provision in this particular situation. But that doesn't extend to other situations. Cole can't conceivably have been addressing or be dispositive in the fugitive tolling situation. It's an entirely different scenario. So why isn't the First Circuit's reasoning not persuasive? Because you're talking about the case law that had long established, but they said, but it made no similar reincorporation of prior case law providing for tolling during periods when offenders were in fugitive status, other than when they were in prison for another offense. The failure to do that, you draw from the selective codification that they intended supervised release to be tolled only by reason of immurement, I guess, committing another offense. And what I would respond, Your Honor, is that that's not persuasive because the other circuits have explained why it's not persuasive. Because there is another equally ---- A principle that you don't let them profit from their own wrong. Because of that principle, but also if Congress intends to override something that is as consistently applied and long established as fugitive disentitlement, to use a broad word, it would have said so. It wouldn't ---- I think one of the reasons I think they may have decided to include the imprisonment aspect of tolling is perhaps that wasn't as well established or perhaps there was inconsistency in the case law. I haven't researched that. But there really was no reason to include an additional tolling provision for fugitive status. It had been applied since the time of parole was initiated. It had been routinely and consistently applied by the courts. There was just no need to make it clear, which is what I believe the imprisonment position was intended to do, was to make it clear. Because I could easily see a judge saying, I'm not going to find that it was suspended while you were in prison. You couldn't comply with your conditions of release. So they wanted to say, yes, Judge, it is suspended while you're in prison. As I said, I did not do research on that issue, but it's just a, you know, a logical assumption that there was a reason to include that specific provision, but no need to include fugitive tolling provision. Or perhaps it was an oversight. But I really feel strongly that the more important statutory rule of construction here is that Congress simply doesn't override such a longstanding, judicially created, equitable concept without saying so. So what happens? There's a revocation hearing. And in that, one of the issues is when should we deem supervised release to have expired? And you'll have litigation over what it means to abscond from supervised release? There could be a question raised about whether a defendant was truly a fugitive. That has happened in the Ninth Circuit. There's a series of cases that address that issue. For example, one defendant said, just a failure to report isn't enough. And the Ninth Circuit responded, well, you not only failed to report, you didn't do anything you were required to do by your terms of supervised release. How have the cases done that in connection with parole? Again, imprisonment's easy, but parole. Parole, they just found that the defendant would not receive credit for any period. So if you violate parole and you end up back in prison, you didn't get any credit for the period that you had absconded or were in fugitive status. In other words, you weren't going to benefit by that. So that wasn't an extension of the time of parole as such, which would be what would be desired here. You move the expiration date, basically. There, it's a matter of, okay, you don't get credit. Your Honor, I have to apologize. I didn't read all the parole cases. I know that the fugitive doctrine was applied routinely in the parole concept. The one other point that if I could address, I know my time is up, but the fact that there won't be, the defendant doesn't get a windfall from this. Well, I'm not, we're not arguing that the defendant gets a windfall from this. The fugitive doctrine of tolling doctrine is not based on what, you know, how big an advantage the defendant might get by this. The fact is that the defendant does get a benefit. And this case is a clear example. If we take 3583I out of the picture, what we have here is a defendant who had been charged with certain reporting violations. He then commits a pretty horrendous crime. If the only thing that the court could consider, because the warrant, the second warrant, wasn't timely filed, and if we won't, that's a whole 3583I issue, then he wouldn't be, that issue wouldn't be before the court. The court would be punishing him for a grade C violation of failing to report and failing some drug tests. That's a far cry. Most judges, even if there is some, there's a guideline that says you could consider such conduct, judges, it's not going to drive their sentence. They're going to be in a very different posture if that violation is not before the court. But the difference is, okay, he commits a serious crime. He's going to be arrested and charged with that crime. But we're not going to say, okay, we're revoking your supervised release because of that, and then you get an additional punishment. Well, no, that's exactly the point, Your Honor. If that, if he was, again, we'll relate it just to fugitive status. If he was in fugitive status, not complying with his conditions of supervision at all, in this case his whereabouts were unknown as reported by the probation officer and uncontested at the hearing, then what happens is he actually is violating the court's supervision. He has breached that court's trust. He is still supposed to be under the supervision of the district court judge. And that new offense, regardless of what it is, in this case it's a fairly serious crime, in other cases it's not such a serious crime, but that the court should have the opportunity and the ability to consider that in revoking supervised release and considering the appropriate punishment for that defendant, again, within the context of it. But under the facts of this case, is there any nexus between the first warrant and the second warrant? No. We would not argue that there's a relationship between the two, unlike the Edwards case in New York where there was a relation back because the travel violations then resulted in that. And that's another thing when we get into the cases, they have rejected that idea that it has to be tied back. That's more of a 3583I argument, whether the second warrant and the first warrant were related, and I'll stop talking unless your honors have any other question on the other issue. Thank you very much. My colleague candidly appealed to the court to draw upon equity in construing this statute. Now, it's not only in Merlino but in Cole that this court said, we're not going to circumvent what Congress said by resorting to equitable considerations. I want to lay out, if I may, and it actually gets us back to 3583I, why our position does not raise any of the bugaboos that my colleague is concerned about or that the adverse circuits have identified. Those simply are not concerns, and all of these concerns can be resolved without doing violence to the language of the statute, which is what is proposed here. Now, the answer that my colleague seemed to give, she was asked, what about the wind, Judge Rendell, you asked, you explained there wouldn't be a windfall because when the defendant is apprehended, he then can be adjudicated and supervised release revoked. And my colleague referred to, what about conducts that occurred after the untold period of supervised release? Well, that conduct can still be considered. So what happens in that situation, what should have happened in this case, is that the court must adjudicate the timely filed violations strictly. The court must determine whether on the basis of the timely filed violations, it is appropriate to revoke supervised release and return the defendant to prison. If so, at that point, the court is free to consider all relevant information in determining how to exercise its discretion in fixing the prison term. So whatever events took place after the expiration would be within the court's discretion. I was surprised to hear the statement that, what I heard was that a court wouldn't take too seriously a shooting if it was only sentencing technical violations. I agree with that to the extent that there is a difference in the two things. But I do think a shooting would be taken very seriously and would dominate the proceeding. As we see in these supervised release revocation proceedings, there's often a kind of freewheeling practice. And one great virtue of the Merlino decision is that it marked a notable exception to that. It construed a statute strictly and said it's a jurisdictional statute. End of story. Under 3583I, that jurisdictional character of the statute can still be respected. These specters of windfalls can be addressed by consideration at a revocation hearing. And there doesn't need to be drawn some carve-out from the statute that Congress didn't make. As far as the canon about the longstanding practice of putative tolling, I think it's pretty clear, then, that we have two competing canons here. The expressio unius canon is strong because we know Congress likely knew about the fugitive tolling practice and very much did not address it. In Cole, addressing the deportation situation, the court said, it might well make sense to have an equitable exception for deportation, but if Congress wanted one, it could have said so. And I think the same rationale should apply to fugitive tolling, especially since there really isn't the prospect of these miscarriages that some of the other circuits, I think, have erroneously apprehended. Thank you very much. Thank you to both counsels. Very well presented arguments. And we'll take the matter under advisement.